UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BAHAA E. ISWED,

                Plaintiff,                Case No. 1:08-cv-1118

v.                                          Honorable Paul L. Maloney

PATRICIA CARUSO et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.   Factual allegations

Plaintiff Bahaa E. Iswed presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Earnest C. Brooks Correctional Facility (LRF), though some portion of the events in issue occurred while he was housed at the Ryan Correctional Facility (RRF). He sues the following individuals in their official and personal capacities: MDOC Director Patricia Caruso, MDOC Step III Grievance Coordinator James Armstrong, RFF Warden Raymond Booker, RFF Deputy Warden William Ray, RFF Inspector Wright Wade, RFF Grievance Coordinator Marva Myles, LRF Warden Mary Berghuis, LRF Lieutenant G. Riley, and Embarq Payphone Services, Inc.

Plaintiff is imprisoned on a life sentence, which was imposed on October 2, 1998. Plaintiff alleges that, since his incarceration, he has been denied the right to make telephone calls to his immediate family members, all of whom reside in Jordan and Romania. According to the complaint, the telephone numbers of Plaintiff's family members have been placed on his approved list of authorized numbers. Plaintiff does not attempt to call his family members by way of collect calls, but instead has purchased a pre-paid telephone debit card. Nevertheless, Plaintiff's calls cannot be connected to his overseas telephone numbers.

Plaintiff acknowledges that MICH. DEP'T OF CORR., Policy Directive 05-03-130 ¶ G states that telephone service "shall be provided throughout the United States, Canada, Mexico, Puerto Rico, the Virgin Islands, and Guam." He asserts, however, that the limitation on call destinations applies only to collect calls, not to pre-paid debit calls. He therefore contends that he is being denied telephone usage in violation of MDOC policy. He complains that he has attempted

to resolve the problem since January 2005, but that various Defendants have given him differing interpretations of the policy.

Plaintiff further alleges that, regardless of the correctness of the policy's application, the limitation on his telephone privileges subjects him to a variety of constitutional deprivations. First, he alleges that he is being subjected to cruel and unusual punishment by the deprivation of family telephone privileges. Second, he claims he has been subjected to discrimination in violation of his right to equal protection under the Fourteenth Amendment. Third, he alleges that his First Amendment right to communicate with his family has been infringed. Fourth, he complains that he has been deprived of his rights under the Free Exercise Clause of the First Amendment. Fifth, he complains that his attempts to grieve the misapplication of the policy were rejected on the grounds that challenges to policy were nongrievable. He asserts that Defendants' rejection of his grievance interfered with his right of access to the courts by preventing him from exhausting his administrative remedies.

Plaintiff alleges that he has suffered anxiety, emotional distress and panic attacks because he has not been permitted to have telephone conversations with his immediate family. In his requests for relief, he seeks monetary damages and injunctive relief.

  II.  <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations respecting all the material elements

to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombley*, 127 S. Ct. at 1965; *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (holding that a court need not accept as true legal conclusions or unwarranted factual inferences). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *see also United States v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008); *United States ex rel. Bledsoe v. Comty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment

Plaintiff alleges that the Eighth Amendment is violated by Defendants' failure to permit him to call his family members for over ten years. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must

result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. The right to use a telephone, much less the right to make overseas long distance telephone calls, does not fall within the "minimal civilized measure of life's necessities" described by the Court in *Rhodes*, 452 U.S. at 347. *See Perez v. Fed. Bureau of Prisons*, 229 F. App'x 55, 57 (3d Cir. 2007) (restriction on telephone privileges does not implicate the Eighth Amendment).

### B.     First Amendment – Freedom of Association

Plaintiff contends that his First Amendment rights were violated by Defendants' application of a policy that prevented Plaintiff from having telephone contact with his family. A right to intimate association with family members has been held to derive from both the First Amendment right of association and the substantive protections of the Fourteenth Amendment's Due Process Clause. *See*, *e.g.*, *Roberts v. United States Jaycees*, 468 U.S. 609, 617-20 (1984); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978); *Moore v. City of East Cleveland*, 431 U.S. 494 (1977).

"[A] prison inmate retains those First Amendment rights [of freedom of speech and association] that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (evaluating constitutionality of limiting one channel of communication with those outside of prison through

review of adequacy of alternative channels of communication).  *See also Thornburgh v. Abbott*, 490 U.S. 401 (1989) (evaluating regulations governing receipt of subscription publications by federal prison inmates).  Thus, to the extent not inconsistent with their status as prisoners or with legitimate penological objectives, prisoners retain their "First Amendment rights to communicate with family and friends."  *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994).  The courts "accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."  *Overton v. Bazzetta*, 539 U.S. 126, 132 (2002) (holding that termination of all non-contact visits did not violate the right to freedom of association) (citing cases).  Moreover, the prisoner bears the burden of proving that prison regulations impermissibly infringe upon protected constitutional rights.  *Id.*

The courts repeatedly have held that "prisoners have no per se constitutional right to use a telephone."  *United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000).  *See also Valdez v. Rosenbaum*, 302 F.3d 1039 (9th Cir. 2002) (holding that there is no First Amendment right to telephone access; instead there is a First Amendment right to communicate with persons outside of prison walls, and "[u]se of a telephone provides a means of exercising this right"); *Washington*, 35 F.3d at 1100 ("an inmate 'has no right to unlimited telephone use.'") (quoting *Benzel v. Grammar*, 869 F.2d 1105, 1108 (8th Cir. 1989)).  In addition, the Supreme Court has noted that "freedom of association is among the rights least compatible with incarceration."  *Bazzetta*, 539 U.S. at 131.  When a prison regulation or practice impinges on inmates' speech and association rights, "the regulation is valid if it is reasonably related to legitimate penological interests."  *Turner v. Safley*,

482 U.S. 78, 89 (1987). The Supreme Court has identified four factors to be considered in determining the reasonableness of the regulation or practice at issue:

> [1] whether the regulation has a "'valid rational connection'" to a legitimate governmental interest; [2] whether alternative means are open to inmates to exercise the asserted right; [3] what impact an accommodation of the right would have on guards and inmates and prison resources; and [4] whether there are "ready alternatives" to the regulation.

*Bazzetta*, 539 U.S. at 132 (quoting *Turner v. Safley*, 482 U.S. 78, 89-90 (1987)).

Here, Plaintiff does no more than assert that he has an unencumbered right to have telephone conversations with his overseas family. Such an assertion falls far short of alleging that the governmental regulation is unrelated to a legitimate governmental interest. Indeed, it is apparent that there exists a legitimate governmental interest in drawing a reasonable line between domestic and international telephone access. *Cf. Bazzetta*, 539 U.S. at 133 (holding that line-drawing among categories of potential prison visitors is reasonable). It undoubtedly is reasonable to limit the ability to make collect calls outside the North American service area, as difficulties with collection for those calls could impose significant additional costs on the telephone service contract. Moreover, despite the fact that the prison has allowed some inmates to purchase pre-paid telephone cards for making their calls, the prison reasonably could conclude that a telephone contract involving a single service area for both pre-paid and collect calls was appropriate to limit the complexity and expense of the telephone contract. Further, permitting overseas calls would compound translation problems for call monitoring and would create additional difficulties in maintaining prison security. *See Arney v. Simmons*, 26 F. Supp. 2d 1288, 1293 (D. Kan. 1998) (recognizing problems for prison security caused by unrestricted telephone access). As a result, under the first *Turner* factor, clear legitimate governmental interests exist.

Second, Plaintiff does not dispute that alternative means exist for him to exercise his right to association. Plaintiff may correspond with his family and friends and his family and friends may visit him in person.[1] In addition, Plaintiff retains a substantial ability to make telephone calls. He may call any family member or friend who resides within the North American telephone service area. Through conversations with such individuals, Plaintiff may receive and convey news to his overseas family members. *See Bazzetta*, 539 U.S. at 135 (noting that a restriction on the category of individuals who could visit an inmate did not prohibit the inmate from sending messages to those not permitted to visit through those who were permitted to visit); *see also Pell*, 417 U.S. at 825 (concluding that a restriction on visits from the press did not bar communication with the press or the public through those entitled to visit). The second *Turner* factor therefore also weighs in favor of the government.

Third, in order to accommodate Plaintiff's telephone rights, Defendants likely would need to renegotiate the service area for the overall telephone contract for MDOC inmates. As previously noted, such renegotiation could come at substantial cost and require substantial oversight to discriminate between collect and pre-paid calls. Moreover, even assuming that individual exceptions were possible to negotiate with the carrier, the accommodation likely would require the allocation of limited personnel resources to duties involved in tailoring the availability of telephone service to individual inmates. *See Bazzetta*, 539 U.S. at 135 (noting that impact on staff, other inmates, the allocation of prison resources, and the safety of visitors are all factors to be weighed under the third *Turner* factor) (citing *Turner*, 482 U.S. at 90). In addition, greater demands would

---

[1] Admittedly, because Plaintiff's immediate family reside in Jordan and Romania, distance undoubtedly is an impediment to personal visits. However, the impediment to personal visits is unrelated to governmental restrictions on Plaintiff's right to association.

be placed on prison staff to successfully monitor overseas telephone communications. Again, the third factor weighs in favor of upholding the restriction.

Finally, Plaintiff fails to suggest any ready alternative to the categorical limitation on overseas calls. As the Court has emphasized, the fourth factor is not a "least restrictive alternative" test. *Turner*, 482 U.S. at 90. For the reasons already discussed, it does not appear that any obvious alternative exists that "fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal." *Bazzetta*, 539 U.S. at 136.

In sum, all four *Turner* factors weigh in favor of the limitation imposed by the MDOC on the availability of long-distance service. Plaintiff therefore fails to state a freedom of association claim.

### C.     Equal Protection

Plaintiff complains that his rights under the Equal Protection Clause of the Fourteenth Amendment have been violated because, unlike most other prisoners, he has been unable to speak to his immediate family members by telephone. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Petitioner does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998).

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff fails even to allege that a decision to limit long-distance calls to destinations within the United States and its territories is irrational. Moreover, for the reasons previously discussed, the distinction drawn by the MDOC is wholly rational and reasonably related to legitimate purposes. Further, Plaintiff fails to identify any prisoner who attempts to call an international number outside North America or certain United States territories who is treated differently. He therefore fails to identify any similarly situated person. For all these reasons, his equal protection claim fails.

### D. First Amendment – Free Exercise Clause

In the first paragraph of his complaint, Plaintiff flatly alleges that Defendants have deprived him of his rights under the Free Exercise Clause. However, in the body of the complaint, Plaintiff makes no factual allegations about his religion or about any actions by Defendants that impair the free exercise of his religion. While a complaint need not contain detailed factual

allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombley*, 127 S. Ct. at 1965; *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (holding that a court need not accept as true legal conclusions or unwarranted factual inferences). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. *See also Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (conclusory unsupported statements are insufficient to state a claim); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985). In the complete absence of facts related to his allegation of constitutional violation, Plaintiff fails to state a claim under the Free Exercise Clause.

### E.     Access to the Courts

Plaintiff alleges that, by rejecting his grievances about the telephone policy, Defendants interfered with his right to access the courts because he was prevented from exhausting his administrative remedies. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v.*

*Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the grievance process have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *See Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Plaintiff fails to demonstrate that the rejection of his grievance in any way impaired his ability to pursue a nonfrivolous legal claim. Plaintiff filed the instant action, raising multiple challenges to the telephone policy. He does not allege that Defendants prevented him from filing or delayed the action in a material way. In addition, the Court has addressed each constitutional claim and found each to be meritless. As a result, nothing about the grievance process has in any way interfered with Plaintiff's pursuit of a meritorious legal claim. He therefore fails to state an actionable access-to-the-courts claim.[2]

### F.     Policy Violation

Plaintiff alleges that Defendants are misapplying MDOC policy by preventing him from making international calls, even when he uses a pre-paid debit card. Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985); *McVeigh v. Bartlett*, No. 94-23347, 1995

---

[2]Among his requests for relief, Plaintiff also seeks an order prohibiting Defendants from interfering with his right of access to the courts by retaining or confiscating his legal materials. Plaintiff, however, does not claim that Defendants already have interfered with his legal materials. Instead, he requests relief in anticipation that they will do so because "the Department of Corrections is known for confiscating once a claim has been filed against them." (Compl. at 16.) Such speculative allegations about potential future conduct fails to support an access-to-the-courts claim based on interference with Plaintiff's legal materials.

WL 236687 at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to

trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

        This is a dismissal as described by 28 U.S.C. § 1915(g).

        A Judgment consistent with this Opinion will be entered.


Dated:   January 29, 2009               /s/ Paul L. Maloney
                                                         Paul L. Maloney
                                                         Chief United States District Judge